## A. G. MAGILL v. CARRIE S. MARTIN.

1. TAX DEED; *Statutory Form; Modification.* While the ordinary rule is, that where the statute prescribes the form of a tax deed, a compliance with that form is sufficient, yet where the conditions of the sale are such that to follow the form is to recite an untruth and show an illegal sale, the form must be modified to suit the facts.

2. TAX SALES; *Purchase by County.* A county may not enter into competition with individuals as a voluntary bidder at a tax sale; it can only become the involuntary purchaser of what cannot be otherwise sold. [Following *Norton v. Friend,* 13 Kas., 532.]

3. ————— The statutory form of a tax deed is for voluntary purchasers, and where such a deed is based upon a sale to the county, it must be modified so as to show the conditions upon which a county can lawfully become a purchaser.*

*Error from Bourbon District Court.*

MAGILL brought his action to foreclose a mortgage given by Edwin A. Wade and wife on Lot 2 in Block 193, city of Fort Scott, to secure the payment of notes given by Wade alone, amounting to $400. *Martin* being in possession of said property claiming title thereto, was joined as a co-defendant. The Wades made default. *Martin* answered, setting up title in fee in herself under a tax deed issued subsequently to the execution of said mortgage. Trial of the issue joined on this answer, at the June Term 1873 of the district court, (C. W. B., judge *pro tem.*, presiding.) The Wade mortgage was executed April 13, 1871, but was not recorded until April 27, 1873. The defendant *Martin* called the register of deeds, and offered in evidence the official record of a tax deed, (the original not being in the possession or under the control of *Martin*,) which record is as follows:

"KNOW ALL MEN by these presents that, whereas, the following described real estate, viz., Lot 8 in Block 126, and Lot 2 and Lot 11 in Block 193, all in the city of Fort Scott, situated in the county of Bourbon, state of Kansas, were subject to taxation for the year 1867; and whereas, the taxes assessed upon said real property for the year aforesaid remained due and unpaid at the date of the sale hereinafter named; and whereas, the treasurer of said county did on the 8th day of May, 1868, by virtue of the authority in him vested by law, at the sale begun and publicly held on the

[* THE full report of this case, presenting questions not passed upon by the court, is explained by the fact that the case was prepared for 13 Kas., and with the intent that it should appear in that volume in connection with the case of *Norton v. Friend;* and it was so prepared, because the petition in error and record presented for review many questions frequently arising before trial courts in tax-title cases respecting the regularity and validity of acts and proceedings of assessors and county treasurers, which questions are shown by the record to have been considered and decided in the court below, and which were renewed and earnestly pressed here by counsel for plaintiff. This court, however, following *Norton v. Friend,* (13 Kas., 532,) held the tax deed void on its face, and reversed the judgment, upon one of the six objections made to said deed on the trial in the district court, but which objection counsel for plaintiff in this case do not even mention in their elaborate brief.—REPORTER.]

first Tuesday of May 1868, expose to public sale at the county-seat of said county, in substantial conformity with all the requisitions of the statute in such case made and provided, the real property above described, for the payment of the taxes, interest, and costs then due and remaining unpaid on said property; and whereas, at the time and place aforesaid, said Bourbon county having offered to pay the sum of $23.05, being the whole amount of taxes, interest, and costs then due and remaining unpaid on said property for the aforesaid Lot 8 in Block 126, and Lots 2 and 11 in Block 193, all in the city of Fort Scott, which was the least quantity bid for, and payment of said sum having been by it made to said treasurer, the said property was struck off to it at that price; and whereas, the said Bourbon county did on the 28th day of June 1871, duly assign the certificate of the sale of the property as aforesaid, and all its right, title and interest to said property to V. McNally, of Washington, D. C., for the sum of $41.52; and whereas, three years have elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law: Now therefore, I, C. Fitch, county clerk aforesaid, for and in consideration of the said sum of $41.52 taxes, costs, and interest due on said lands for the years aforesaid, to the treasurer paid as aforesaid, and by virtue of the statute in such case made and provided, have granted, bargained and sold, and by these presents do grant, bargain and sell unto the said V. McNally, his heirs and assigns, the real property last herein described, to have and to hold unto him, the said V. McNally, his heirs and assigns forever, subject however to all the right of redemption provided by law.

"In witness whereof, I, C. Fitch, county clerk aforesaid, by virtue of authority aforesaid, have hereunto subscribed my name, and affixed my official seal, on the 28th day of June 1871.        C. FITCH, County Clerk.    [SEAL.]

"*Witness*, T. F. Robley."

This deed was duly acknowledged and certified, and was duly recorded July 7th, 1871. To the receiving and reading of said record in evidence plaintiff *Magill* objected, the objections being, as shown by the bill of exceptions, as follows:

"1st, That said deed on its face appears to have been executed under the seal of the county clerk, and not under the seal of Bourbon county, but purports to be under the private seal of the clerk.

" 2d, That said deed is void upon its face, in that it states the levy of taxes upon, assessment of, sale of, and attempted conveyance of, *three lots in gross* for taxes levied upon them jointly, and does not show that the lots were assessed and sold separately, as required by law.

" 3d, That said deed does not show that said lot could not have been sold to some other person than Bourbon county, for the taxes and charges.

" 4th, That said deed does not show what taxes and charges 'Lot 2 in Block 193,' was sold for, or that it had any taxes or charges upon it.

" 5th, That the answer of Carrie S. Martin does not state facts sufficient to constitute a defense to the plaintiff's action.

" 6th, That the said deed, as shown by the record, is not *prima facie* evidence of the regularity of all proceedings, nor that said lot was subject to taxation, or that anything had been done making it lawful to sell it for the taxes of 1867."

These objections were overruled, and said tax deed was read in evidence. Defendant *Martin* then called the county clerk, who produced three separate tax-sale certificates, filed in his office June 28th, 1871. Said certificates, except as to description of property, and amount of taxes, were alike. One was for "Lot 8 in Block 126," amount of taxes, etc., $4.75. Another was for "Lot 11 in Block 193," amount of taxes, etc., $4.75. The third was as follows:

$13.55. TREASURER'S OFFICE, BOURBON CO., KAS.,
FORT SCOTT, June 26th, 1871.

This is to certify that Bourbon county did on the 8th day of May 1868, purchase from me, as County Treasurer, Lot 2, Block 193, in the city of Fort Scott, Bourbon county, Kansas, for the sum of $13.55, being the taxes, penalty and charges on the above described real property for the year 1867, the same having been duly advertised and sold according to law. The said Bourbon county, or assignee, will be entitled to a deed for said described real property, on and after the 8th day of May 1871, if the same be not previously redeemed according to law. Witness my hand the day and year first above written.

C. A. MORRIS, County Treasurer.

On the back of which certificate was the following:

" For and in consideration of the sum of $24.24, I hereby

assign the within certificate to V. McNally. Dated this 28th of June 1871. C. FITCH, County Clerk."

Plaintiff objected to the introduction of said tax-sale certificates and indorsements thereon, because —

"1st, Said certificates and each of them are irrelevant, incompetent, and immaterial. 2d, Said certificates and each of them on their face show that they were not issued according to law, in that they are not issued to V. McNally, the person who paid the money into the county treasury, and they do not set out on the face the amount paid into the treasury."

These objections were overruled, and the certificates were read in evidence. Defendant then gave in evidence a deed of conveyance from McNally to herself of said "Lot 2 in Block 193," dated June 28th 1871, and duly recorded. The plaintiff, to impeach said tax deed, called the county clerk, who produced certain records, among them, the assessment-roll for the city of Fort Scott for 1867, (which showed that the three lots described in the tax deed were assessed and valued separately — one of said lots being assessed to "G. R. Sweeney," as owner, and described and valued thus: "Lot 2, B. 193, $300")— to which assessment-roll was annexed a paper in the form of the affidavit required by § 26, ch. 118, Laws of 1866, which was signed by "J. A. T., deputy assessor," but was not sworn to. Another record was a printed copy of the treasurer's advertisement of the "Delinquent Tax List of Bourbon county for 1867," stating that the lots and lands therein described, if not sooner redeemed, would be sold on the first Tuesday of May, 1868, etc. Said list contained these descriptions: "1 1 b 126, 4.75;" "8 b 126, 4.74;" "1 1 b 193, t 6.95;" "1 2 b 193, t 13.55;" "lot 3 b 193, t 6.95;" "11 b 193, t 4.75." Another of said records was a printed copy of the treasurer's advertisement of "List of lands for which tax title deeds will be given on and after May 5th 1871," on tax-sale of 1868. In said list was the following:

| Name. | Lot. | Block. | Amount. |
|---|---|---|---|
| Ft. Scott Town Co.............................................. | 8 | 126 | $8 46 |
| J. R. Sweeney............................................... | 2 | 193 | 23 86 |
| P. F. Bartle................................................. | 11 | 193 | 8 46 |

The plaintiff also gave in evidence the record of a warranty deed from Wade and wife to defendant *Martin* dated June 24th, 1871. The district court found that Wade was indebted to plaintiff on his notes in the sum of $400 and interest; that the mortgage was given by Wade and wife on said Lot 2, Block 193, to secure said notes, April 13, 1871; that said lot was conveyed by tax deed, duly executed and acknowledged, to McNally; that said lot was subject to taxation for the year 1867, and was duly and separately assessed for that year; that the taxes were not paid, and said lot was duly and separately sold in 1868 for said unpaid taxes, and struck off to Bourbon county; that said lot was not redeemed from such sale, and that said McNally paid to the treasurer the proper amount therefor, and the treasurer gave to McNally a separate certificate of said sale, which was duly assigned to said McNally, and that said lot was duly conveyed by McNally to defendant *Martin*. And as conclusions of law, the court found that plaintiff was entitled to a personal judgment against Wade for $491; that said mortgage was a valid lien on said lot 2, when executed; that said tax deed to McNally was and is valid, and the title conveyed thereby was and is paramount to the lien created by said mortgage: that said paramount title having passed to defendant *Martin* she owns said lot freed from any lien thereon by reason of said mortgage. Judgment was given in accordance with these findings, and plaintiff *Magill* brings the case here on error.

*McComas & McKeighan,* for plaintiff in error:

1. The court should have sustained the objections of plaintiff to the tax deed. The answer of the defendant is no defense to the plaintiff's action. The tax deed is void upon its face, and is made part of the answer. Three lots in different blocks are described as having been sold *en masse* for the joint taxes charged to them. Such a deed is void. 2 Dillon Ct. Ct. Rep., 256; 21 Iowa, 320; 24 Iowa, 392; Gen. Stat., p. 1047, § 85. The deed was not in conformity to law. · The language of the

deed is "my official seal," instead of the seal of the county. The county clerk has no official seal; (§ 25, ch. 25, Gen. Stat., 259.) No seal was affixed to this deed, but merely the word "seal." A tax deed must follow the statute, or it will be void; 18 Wis., 59, 321; 29 Wis., 152.

It will be contended that §.115, p. 1057 of Gen. Stat., authorizes the deed in question. This section merely authorizes an inclusion of different parcels of land in the same deed; but each parcel must have its separate history; must show that it was sold for its own taxes, which could alone authorize a deed at all.

2. The court should have sustained the plaintiff's objection to the tax certificates. The certificates were not issued as the law directs; they were not issued to McNally, nor did they state the amount paid into the treasury by the party purchasing; (Tax Law, ch. 107, § 91, Gen. Stat., 1048.) They could not help the deed, and therefore they were immaterial.

Each parcel of land must have been described by the assessor. The county clerk must have determined the sums to be levied upon each parcel, and so carried it out in the tax-roll, and each parcel must have been separately sold for its own taxes. (Laws of 1866, ch. 118, p. 263, § 22, p. 278, § 76; Gen. Stat., 1047, §§ 84, 85, 86; 21 Iowa, 320; 24 Iowa, 392; 13 Pick., 493.) To help the tax deed in this respect, these certificates were introduced. They contain recitals that there was a certain amount of taxes due on each lot, but do not *contradict* the recitals of the deed that the lots were all sold together for the aggregate taxes chargeable against them.

By the statute the deed must contain a history of the main facts. It must be good *by itself*. The certificates could not make an invalid deed valid; they may have shown that McNally was *entitled* to a good deed, but could not show that he had *received* one. The tax certificates did not extinguish the mortgage; they showed, if anything, a mere lien on the property.

3. There was no valid assessment of this property for the taxes of 1867, nor any return of the assessment roll, nor any

6 — 14 KAS.

verification as required by §§ 26 and 54 of the tax law of 1866. There was a pretended assessment signed by one J. A. T., who describes himself as "deputy assessor;" but it is not sworn to, nor any evidence introduced that he did swear to it, nor any return on it. The oath written is subscribed, but not taken. The testimony shows that one E. J. was county assessor for the years 1866 and 1867. The office of deputy assessor was not elective; and it does not appear that the board of county commissioners had appointed a deputy. (Comp. Laws, p. 432, §§ 121, 122, 123.) How can it be contended that J. A. T. had any authority to make an assessment, when he was not appointed, and he had never qualified? The assessment book was evidence for plaintiff to show irregularities, but was not evidence for defendant to show an assessment without showing the appointment and qualifications of J. A. T. as deputy assessor. (2 G. Greene, 133.) It is a general principle affecting all tax proceedings, that everything must be done which the law says shall be done. All facts necessary to confer jurisdiction must appear on the record. (Blackw. Tax Titles, 34, 39, 43, 44, 50, 55, 65, 68, 112.) A tax sale on a void assessment passes no title. (2 Mich., 486; 23 N. Y., 281; 9 Ohio, 94.) There is no presumption that the oath was taken. (17 Ohio St., 33.) The failure to take the oath was a substantial error. The land-owner has a right to a fair, impartial and conscientious assessment, and the law compels the assessor to make an oath that he had so assessed, and a record to be kept of it. There was no such protection in this case, if an assessment could be made by a pretended deputy, who had never been appointed, sworn or given bond, and who did not take the oath prescribed by law. 57 Penn. St., 13.

4. There are substantial irregularities in the proceedings of the treasurer. In delinquent list for 1867, the lots and blocks are not described as on the tax-roll, as required by § 66, ch. 118, laws of 1866, (§ 81 of the tax law of 1868, Gen. Stat., p. 1046.) In the tax-roll the words "lots" and "blocks" are used; in the treasurer's notice the letters "l"

and " b " only are used, which have no meaning unless author-
ized by statute. Section 93 of the tax law of 1868 author-
izes initials "to designate townships, ranges, and sections, and
the *numbers* of lots and blocks." This language authorizes
the *numerical* description of lots and blocks by initials, but
not otherwise.

The tax law, § 110, requires that the notice of the issuing
of tax-deeds should state the *name of the person* to whom the
property was assessed. The name given was "J. R. Sweeney."
It was assessed to "G. R. Sweeney." The notice did not
state the amount necessary to redeem. The numerals used
were not sufficient without the use of the dollar-mark; (1 Wall.,
398; 27 Cal., 50; 30 Cal., 610; 31 Cal., 132.) The law says
what the notice shall contain; the court cannot dispense with
it on the ground that the owner must take notice of what his
taxes are when his property was sold. The notice is for the
benefit of all parties, and especially for subsequent purchas-
ers, who are to be apprized by the notice of the time when
the deed is to be made, and within which they can redeem
and save their property.

5. It was contended in the court below that, inasmuch as
§ 113 of the tax law, Gen. Stat., p. 1057, provides that "No
irregularities in the assessment or omission from the same, nor
mere irregularities of any kind shall invalidate the tax-deed,"
that plaintiff's objections are not good. If the legislature
meant that no irregularities should affect a tax-deed, then this
section is unconstitutional. The legislature of Missouri in
1864 passed a law making a tax deed "*conclusive evidence* that
each and every thing required to be done, had been complied
with." The supreme court of that state decided this uncon-
stitutional, because it attempted to take away property "with-
out due process of law." (42 Mo., 162.) Section 112 of the
tax law provides that the deed therein set forth shall be *prima
facie* evidence of the regularity of the tax proceedings. This
merely changed the rule of evidence, which it was competent
for the legislature to do; but if § 113 makes the deed good

no matter what the irregularities are, then it is void, because it makes the tax-deed conclusive.

6. The plaintiff introduced a certain warranty deed from Wade and wife to defendant Martin, dated the 24th of June, 1872. The deed from McNally was a quitclaim deed, and was dated one day later, the 25th of June. The purchase from Wade was the real purchase. Mrs. Martin acquired title subject to the tax-deed and the plaintiff's mortgage. She has bought in the tax-title claim for the benefit of the estate acquired from Wade, and has her action on the warranty deed against Wade for the amount paid, if the tax-deed was good, or if the proceedings before made the taxes for 1867 a valid lien. The plaintiff's mortgage still remains.

*W. C. Webb,* for defendant in error:

1. The objection to the tax-deed, that it wanted a proper seal, is not warranted by the record. The original deed was not produced; the record-book from the register's office could not show *the* seal used, but only that *a* seal had been affixed; and as the county clerk has no seal of his own, but is the lawful custodian of the county seal, (§ 43 of 25, Gen. Stat.,) with which he authenticates his official acts, (§§ 43, 60,) the presumption is that he used the seal of "his office;" and his using the words "*my* office seal," (which were in the old form, *vide* Com. Laws, p. 879,) cannot override such presumption.

2. The objection to the validity of the assessment of the land is still more unsubstantial. It makes no difference whether J. A. T. was elected, or appointed, legally, or not; whether he gave an official bond, or not; whether he authenticated his assessment by affidavit, or in any other way, or not. The assessment-roll or assessment-book for the proper year, was in the proper office, and was in due form. It was there as a public record, and was so held and regarded by its custodian, who produced it in court as a "record" belonging to his office, said custodian being the officer appointed by law to hold and preserve the assessment-books : § 25,

Tax Law of 1866; § 36, Tax Law of 1868; ch. 123, laws of 1869; ch. 120, laws of 1870; § 43, ch. 25, Gen. Stat. No other assessment-book for that year was produced, nor was it suggested that this was not made as and for an assessment of the taxable property therein described for such year. Plaintiff produced and gave this assessment-book in evidence. It was a "public record," and as such was competent as evidence, without regard to the man who made it, or his qualifications as officer *de jure.* The record proved too much for plaintiff; it showed the lots described in the tax-deed were in fact assessed, valued, and described separately.

3. The objection to the treasurer's lists, that the "description" is imperfect by reason of the use of the letters "l" and "b," instead of the words "lot" and "block," is not good. The advertisements show that the property advertised was situate in the *city* of Fort Scott. No one could fail to understand that "l" must stand for "lot," and "b" for "block," and nothing else — as "t" clearly stands for "tax." (Tax law of 1868, § 93; Blackw. Tax Titles, 1st ed., p. 238; 2d ed., p. 203; *Hunt v. Smith,* 9 Kas., 138, 153.) As the particular property intended to be designated was in fact designated with reasonable certainty, the description was sufficient: 2 Mo., 124; 18 Vt., 293; 2 Gilm., 444; 13 Ill., 714. The objection as to the "name of the owner," that in the assessment-book it was "*G. R.* Sweeney," and in the advertisement that it was "*J. R.* Sweeney," is frivolous.

4. Nor is there anything in the point that Martin obtained a deed from Wade before she obtained title from McNally. The testimony was that both deeds were in fact *executed* on the same day, and that the purchase from Wade was made for the purpose of obtaining possession. But aside from the object or purpose of the purchase, all Martin acquired by her deed from Wade was the equity of redemption. Such purchase was subject to the mortgage-lien held by Magill, and this mortgage Martin was under no legal nor moral obligation to pay. She could pay it, and save the land, if she chose. She could omit to pay it at the peril of having her

equity of redemption extinguished by the foreclosure of the mortgage. But her purchase and deed from Wade did not prevent her purchasing a paramount title, which had grown up under tax proceedings, (she being under no legal nor moral obligation to pay the taxes for which the land was sold;) nor did it affect or change the character of such tax-title when said tax-title was purchased by her. If *in law* such tax-title was paramount, and extinguished the mortgage-lien, and the equity of redemption while held by McNally, it was equally good when acquired by Martin.

5. The principal question is, Is the tax-deed to McNally, under which Martin claims, valid? The only substantial objection urged in plaintiff's brief against such deed is, that "*three lots*, in different blocks, are described (in the deed) as having been sold *en masse* for the *joint taxes* charged to them." The plaintiff denies the power of the court to go behind the tax-deed and inquire into the actual fact as to the assessment and sale of said three lots, whether joint or separate, but contends that the *tax-deed* "must be good *by itself*." Suppose this to be the correct rule, is this tax-deed void on its face? The deed recites that the three lots, (giving a full and separate description of each,) were subject to taxation for the year 1867; that taxes on said lots for said year remained unpaid; that the county treasurer, on the 8th of May 1868, at a sale begun and publicly held on the first Tuesday of May 1868, exposed said lots to public sale, and sold them — and that all this was done "*in substantial compliance with all the requisitions of the statute in such case made and provided;*" and said deed further recites that the purchaser paid on such sale "$23.05, being the whole amount then due and unpaid on said property," (and again describes said three lots, giving a full and separate description of each.) Does this show a single sale, embracing the three lots? The deed says that "*all the requisitions of the law*" were "*substantially complied with*." The treasurer must sell as he had *advertised;* (tax law, § 84.) He must advertise, "describing such lands and town lots *as the same are described on the tax-roll;*" (§ 81.)

The assessor shall make "a correct and pertinent description of *each parcel* of real property," and insert the same in the assessment-roll, and attach a separate valuation to *each parcel;* (§§ 32, 36.) The county clerk shall determine the sums to be levied upon *each* tract or lot of real property," and set the same down in a "separate column;" (§ 73.) All these acts and proceedings are necessary to make the sale valid. The presumptions are that public officers perform their official duty. The law never presumes the contrary. Sec. 112 of the tax law provides that the tax-deed "shall be *prima facie* evidence of the regularity of *all* proceedings, from the valuation of the land by the assessor, inclusive, *up to* the execution of the deed." We have then, first, the presumption of the law, second, the *prima facie* evidence shown by the execution and acknowledgment *of* the deed, and third, the recital *in* the deed, that the three lots were separately assessed, described, valued, advertised, and sold substantially as the law required. Sec. 115 of the tax law expressly authorizes the county clerk, when required by the purchaser, to include in one and the same tax-deed all the lots purchased by the same person at any one tax sale; and surely, the omission of the county clerk to state in the deed the separate sums for which the several lots were respectively sold, and the setting forth of the aggregate amount of such several sums, stating that such aggregate is the "whole amount due and unpaid on *said property,*" (describing the three lots, separately,) at the time of such sale, will not be construed or tortured by this court into a statement showing that said three lots had been sold together as one tract, (or, in the language of counsel for plaintiff, had been "sold *en masse,*") for the joint taxes charged to the three. To so hold, is to determine that such *omissions* are equivalent to the statement of affirmative facts showing positive violations of the requirements of the tax law, rebutting not merely the presumption of the law that public officers perform their official duty, but the presumption to be drawn from the execution of the deed itself, and contradicting the plain and positive recital in the deed that the sale

was "in substantial compliance with the law." It seems to us that this deed is not void on its face, but valid.

But suppose the true construction of the deed is as plaintiff claims, that it shows a sale of the three lots as one tract, and for one tax: can the court go behind the deed, and look at the assessment-book, the treasurer's notice of sale, and the treasurer's certificate of sale, to see what the facts were, in each case? If the deed is *void* on its face, perhaps it could not be upheld or validated by the records showing the proceedings anterior to the deed to be valid. But the objection urged by plaintiff, if it be well taken, does not show the tax-deed to be *void*, but only *voidable;* and being voidable only, the supposed defect in the proceedings may be shown by the records not to exist in fact. It was competent therefore for defendant Martin to give in evidence the treasurer's certificates of sale; and as these certificates showed the separate and distinct sale of each lot, and the amount of taxes, etc., due and unpaid on each lot at the date of sale, they removed the objection made to the deed, and showed the deed to be valid. The tax certificates were properly issued showing that the lots had been struck off to the county, (§ 91 of Tax Law of 1868,) and they were duly assigned to McNally to whom the tax-deed was issued.

The opinion of the court was delivered by

BREWER, J.: The only question in this case is as to the validity of a tax-deed, and one of the objections to it is the same as that which was held fatal in the case of *Norton v. Friend,* decided at the present term of this court; (13 Kas., 532.) It recites a sale to the county, not as a result of a failure to sell to an individual, but as the result of competitive biddings, in which the county entered as a voluntary bidder. The language of the deed is as follows:

"And whereas, at the time and place aforesaid, Bourbon county having offered to pay the sum of $23.05, being the whole amount of taxes, interests and costs then due and remaining unpaid on said property, for the aforesaid lot, * * * which was the least quantity bid for, and payment of said

sum having been by it made to said treasurer, the said property was struck off to it at that price."

The county is not a voluntary bidder at a tax sale. It enters into no competition with individuals. It pays no money to the treasurer. It simply becomes the involuntary purchaser of that which no individual will buy. The distinction between a purchase by an individual, and one by the county, and the reasons therefor, are clearly pointed out by Mr. Justice Safford in the opinion in the case of *Guittard Township v. Marshall Co.*, 4 Kas., 388. Hence a deed, which recites a purchase by the county under the same conditions as a purchase by an individual, recites an unauthorized and illegal purchase. A deed showing an illegal sale must be void. But it may be urged that this ruling conflicts with the decision in *Hobson v. Dutton*, 9 Kas., 477, where it is said that "the rule is clear, that where the statute contains a form of any instrument, a compliance with that form is sufficient." This deed follows the form of the statute, and according to that rule must be held sufficient. The language of that opinion is general, and so far as the facts of that case are concerned states the law correctly. Yet we think here is found an exception. When the conditions of the sale are such, that, to follow the form is to recite an untruth, and show an illegal sale, the form must be modified to suit the facts. To make a statement of an illegal and void sale evidence of a legal and valid sale, is a contradiction not to be imputed to the legislative intent. The statute says the deed shall be in *substantial* compliance with the form. It thus contemplates minor modifications, and those modifications must be such as to make the deed recite the truth, and comply with the conditions of valid action.

The judgment will be reversed, and the case remanded with instructions to proceed in accordance with the views herein expressed.

All the Justices concurring.